Ian McIntosh
CROWLEY FLECK PLLP
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406)556-1430
imcintosh@crowleyfleck.com

Brad Banias (*Pro Hac Vice Forthcoming)*
Banias Law, LLC
602 Rutledge Avenue
Charleston, SC 29403
Telephone: (843)352-4272
*brad@baniaslaw.com*

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| NORTHERN ROCKIES REGIONAL CENTER, LLC, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
| Defendant. | |

Defendant U.S. Citizenship and Immigration Services ("USCIS") seeks to terminate the designation of Plaintiff Northern Rockies Regional Center, LLC ("NRRC") as a "regional center" without providing actual notice of an untimely payment or a meaningful opportunity to respond and remedy such an untimely

payment. USCIS's termination will put at risk $1.7 billion dollars in ongoing construction projects in Montana; the *thousands* of jobs created by those projects in Montana; and green cards for more than 500 noncitizens. Montana will suffer significant harm if this Court does not enforce the bare minimum standards of statutory or Constitutional process. For the reasons below, this Court should set aside and enjoin USCIS's refusal to provide actual notice of untimely payment and a meaningful opportunity to remedy any such untimely payment before termination.

**PARTIES**

1.     Plaintiff Northern Rockies Regional Center, LLC, is organized under the laws of Montana with its principal place of business at 875 Wyoming Street, Suite #101, Missoula, MT 59801. *See generally* https://www.investusafund.com/ (last visited July 15, 2024).

2.     Defendant Ur Jaddou is the current director of United States Citizenship and Immigration Services. In her official capacity—the only capacity in which she is sued—she is responsible for all agency adjudications, including Notices of Intent to Terminate Regional Center Status.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 106 (1977).

4.      Under its federal question jurisdiction, this Court can hear claims under the

Administrative Procedure Act (5 U.S.C. § 501, *et seq.*) ("APA").

5.      Under the APA, this Court can compel agency action that is unreasonably

delayed or unlawfully withheld. 5 U.S.C. §§ 555(b), 706.

6.      Under its federal question jurisdiction, this Court can also provide

declaratory relief under 28 U.S.C. § 2201.

7.      Venue is proper in this Court under 28 U.S.C. §§ 1391(c)(2), (e)(1)(B)

because Plaintiff "resides" in this District and Division.

8.      Plaintiff need not exhaust its administrative remedies because it would be

futile and it "is axiomatic that one need not exhaust administrative remedies that

would be futile or impossible to exhaust." *Singh v. Ashcroft*, 362 F.3d 1164, 1169

(9th Cir. 2004)

9.      Exhaustion of administrative remedies here is futile because Defendant has

already announced it will terminate for untimely payment of the fee at 8 U.S.C.

§ 1153(b)(5)(J)(ii) regardless of the reason for nonpayment and the Plaintiff here

does not dispute it did not timely pay the relevant fee.

## FACTS

10.     Over the last years, Plaintiff Northern Rockies Regional Center, LLC

("NRRC") has raised hundreds of millions of dollars to help finance billions of

dollars in construction projects in Montana.

11.    This investment has created tens of thousands of jobs for lawful workers in Montana.

12.    And by accepting and deploying this investment solely from noncitizens in compliance with the terms of 8 U.S.C. § 1153(b)(5) ("EB-5 program"), the NRRC has helped hundreds of noncitizens acquire lawful permanent residency in the United States.

13.    This is what Congress intended when it created the EB-5 program in 1990 to create jobs for U.S. workers with direct investment from foreign nationals. See Immigration Act of 1990, Public Law No. 101-649, § 121(a) (Nov. 29, 1990).

14.    Congress then expanded the EB-5 program to include the "regional center" model. See Public Law No. 102-395, Title VI § 610(a) (Oct. 6, 1992).

15.    Under the regional center model, new commercial enterprises in the United States ("NCEs") could team up with government-designated regional centers to create pooled investment vehicles to fund large projects and supercharge job creation. *Id.*

16.    For every investor in an NCE associated with a designated regional center, each investor would have to invest between $500,000 and $1.4 million dollars into the NCE and the NCE would have to create at least 10 direct or indirect jobs per investor. *See generally* 8 C.F.R. § 204.6.

17.     The regional center model of the EB-5 program unsurprisingly took off during in the aftermath of the 2008 financial crisis.

18.     The NRRC was organized under the laws of Montana in 2010, and USCIS "designated" it as a regional center under the EB-5 program on April 11, 2011.

19.     Over the next 13 years, it raised more than $488 million dollars for foreign investors for projects exclusively in Montana. This capital infusion in turn helped finance billions in construction projects, thousands of new jobs, and hundreds of green cards for the noncitizen investors.

20.     During this time, the NRRC has remained compliant with USCIS's everchanging regulations and policies.

21.     On March 15, 2022, Congress passed the EB-5 Reform and Integrity Act of 2022 ("the Act"). P.L. 117-103, 136 Stat. 1070 (Marc. 15, 2022) (codified at 8 U.S.C. § 1153(b)(5)).

22.     As part of the Act, Congress established the "EB-5 Integrity Fund." 8 U.S.C. § 1153(b)(5)(J).

23.     The EB-5 Integrity Fund was intended to pay for enforcement of the Act's new accountability and integrity measures. *Id.* at § 1153(b)(5)(J)(iii) (describing permissible use of the money in the EB-5 Integrity Fund).

24.     To generate revenue for the Fund, Congress required designated regional centers to pay an annual fee of $10,000 or $20,000, depending on the number of

investors in the regional center's current projects. *Id.* at § 1153(b)(5)(J)(ii)(I)

("Integrity Fee").

25.    The provision states in full:

**(I) Annual fee**

On October 1, 2022, and each October 1 thereafter, the Secretary of
Homeland Security shall collect for the Fund an annual fee—

(aa) except as provided in item (bb), of $20,000 from each
regional center designated under subparagraph (E); and

(bb) of $10,000 from each such regional center with 20 or fewer
total investors in the preceding fiscal year in its new commercial
enterprises.

*Id.*

26.    To ensure payment, Congress required USCIS to impose a reasonable

penalty on any regional center that did not pay the Integrity Fee within 30-days of

its due date, and if the regional center refused to pay after 90-days, Congress

required USCIS to terminate the "designation" of noncompliant regional center. *Id.*

at § 1153(b)(5)(J)(iv).

27.    The enforcement provision states in full:

**(iv) Failure to pay fee**

The Secretary of Homeland Security shall—

(I) impose a reasonable penalty, which shall be deposited into the
Fund, if any regional center does not pay the fee required under
clause (ii) within 30 days after the date on which such fee is due;
and

(II) terminate the designation of any regional center that does not pay he fee required under clause (ii) within 90 days after the date on which such fee is due.

*Id.*

28.     This two-step process ensured a designated regional center would get *actual notice* of an unpaid or untimely Integrity Fee *before* termination.

29.     USCIS eventually implement the Annual Fee and its enforcement provisions on March 2, 2023. DHS, Notice of EB-5 Regional Center Integrity Fund Fee, 88 Fed. Reg. 13141, 13142 (first column) (DHS Mar. 2, 2023). USCIS properly described this notice as merely "constructive notice." *Id.* (second column).

30.      In its Notice, USCIS admitted that the Act "requires DHS to impose a reasonable penalty (to be paid to USCIS and deposited into the Fund when collected) on a regional center that does not pay the annual Integrity Fund Fee within 30 days after the date on which such fee is due." *Id.* at 13143 (third column).

31.     But USCIS determined it would exercise its discretion to not charge a late penalty until it engaged in rulemaking to define what a "reasonable penalty" would be: "DHS has decided and USCIS is announcing that, as a matter of discretionary enforcement policy, we will not charge a late fee until we take further action to set the amount of the late fee, as well as the process for collecting the late fee." *Id.*

32.    Though USCIS would exercise its discretion to forgo late penalties, USCIS

would still terminate the noncompliant regional center's designation after 90-days:

> USCIS will, as authorized by the 2022 Act, terminate the designation
> of any regional center that does not pay the full fee within 90 days after
> the date on which such fee is due (*i.e.*, a regional center does not make
> payment, or a regional center pays $10,000 when it owes $20,000).

*Id.*

33.    While the notice claims termination would "not be automatic," USCIS

announced a strict liability policy. *Id.*

34.    USCIS explained that, while it would issue notices of intent to terminate,

such notices would require the "regional center to prove that the fee was paid in the

proper amount by the due date before sending a notice of termination." *Id.*

35.    In other words, if a regional center made a good faith error in the calculation

or submission of the Integrity Fee, it would be terminated because it could not

show it submitted the Integrity Fee timely, which is precisely what is happening

here in violation of the statutory process and the Due Process clause.

36.    On March 27, 2023, in accordance with USCIS's March 2, 2023 notice, the

NRRC paid USCIS the $20,000 Integrity Fee.

37.    Thereafter, the NRRC was sought and acquired by its current owner.

38.    Under the Act, a regional center must file a request for an amendment to its

designation *before* significant changes to its structure, ownership, or

administration. 8 U.S.C. § 1153(b)(5)(E)(vi)(I).

39.    Because NRRC's designation is its key asset, on June 16, 2023, the NRRC filed a Form I-956, Application for Regional Center Designation to request an amendment to its prior regional center approval to permit changes in its ownership and business structure:

> Specifically, the Form I-956 requests the following . . . [a]pproval to change the regional center's ownership, organizational structure, or administration, including the sale of the regional center, o rother arrangements that would result in individuals not previously subject to the requirements under INA § 203(b)(5)(H) becoming involved with the regional center.

40.    USCIS assigned the application receipt number INF2300003994.

41.    On October 16, 2023, the transaction closed without issue as the NRRC had outlined in its Form I-956.

42.    During the transaction, the seller represented that the NRRC had no indebtedness or liabilities.

43.    After the closing, the NRRC continued to solicit new investors for new projects in Montana.

44.     On May 3, 2024, USCIS approved the NRRC's Form I-956, approving the change in ownership.

45.    During the adjudication of its Form I-956, USCIS did not give the NRRC any actual notice that it had not timely paid the integrity fee for Fiscal Year 2024.

46.    In its Form I-956 approval, in fact, USCIS notified the NRRC that it would be responsible for paying an integrity fee on or by October 1 and, if the NRRC did

not pay it timely, USCIS would first penalize it and *then* terminate it for

nonpayment:

> Every year on October 1, each designated regional center with 20 or
> fewer total investors in the preceding fiscal year in its NCEs must pay
> $10,000 to the EB-5 Integrity Fund (the "Fund"). Designated regional
> centers with 21 or more petitioners in the preceding fiscal year must
> pay $20,000 to the Fund.

> USCIS will impose a reasonable penalty, which shall be deposited
> into the Fund, if the Regional Cetner does not pay the fee required
> within 30 days after the date on which such fee is due. USCIS may
> sanction, and ultimately terminate, an y regional center that does not
> pay the fee required within 90 days after the date on which the fee is
> due.

47.    The NRRC had no reason to believe it was not in compliance with *all*

statutory, regulatory, and policy guidelines after USCIS approved its Form I-956

on May 3, 2024.

48.    On June 27, 2024, however, USCIS issued the NRRC a Notice of Intent to

Terminate ("NOIT").

49.    The NOIT noted that the NRRC was originally designated on April 11, 2011,

but it made no mention of the May 3, 2024, approved amendment to its

designation.

50.    Consistent with its strict liability interpretation of the Act announced in its

March 3, 2023 Notice, the NOIT requires the NRRC to send in proof that it paid

the fiscal year 2023 integrity fee on or by December 30, 2023, or else it will

terminate the NRRC's designation:

USCIS must terminate any regional center that does not pay the fee required within 90 days aft er the date on which the fee is due. INA 203(B)(5)(J)(iv)(II). Therefore, USCIS must take steps to terminate any regional center that, on or before December 30, 2023, has not paid the required EB-5 Integrity Fund fees for fiscal year 2023 and/or fiscal year 2024.

As of the date of this notice, USCIS records indicate that the [NRRC] did not pay the required EB-5 Integrity Fund fee for Federal fiscal year 2024. Due to the Regional Center's failure to pay the required EB-5 Integrity Fund fee within 90 days of it becoming due, USICS intends to terminate the designation of the regional center for participation in the Program as required by INA 203(b)(5)(J)(iv)(II).

51.    In its NOIT, USCIS notes that, if the NRRC indeed had not timely paid, it now had no opportunity to cure such oversite:

> **The [NRRC] must provide evidence that it submitted its required EB-5 Integrity Fund fee payment within the applicable payment period. USCIS will reject EB-5 Integrity Fund fee payments for fiscal year 2023 and fiscal year 2024 received after Dec. 30, 2023, including those made in response to this Notice of Intent to Terminate.**

52.    Upon receipt of the NOIT, the new owner of the NRRC discovered the prior owners indeed had not paid the integrity fee for fiscal year 2024.

53.    There is no dispute that the NRRC did not timely remit the fiscal year 2024 Integrity Fee. But there can be not dispute that the NRRC's failure to timely pay was a good faith mistake that eluded highly specialized EB-5 attorneys and sophisticated acquisition attorneys alike.

54.    Under the terms of the NOIT, USCIS will terminate the NRRC because it did not pay the fiscal year 2024 integrity fee on or by December 30, 2024 and it cannot now remedy this good faith mistake.

55.    To be clear, the NRRC is willing to pay the integrity fee immediately.

56.    If USCIS had provided actual notice of the unpaid integrity fee through the imposition or notification of a late penalty, the NRRC would have paid it.

57.    But the NRRC never received actual notice that it had not paid the fee timely prior to December 30, 2023.

58.    USCIS never imposed a penalty for untimely payment. Instead, it terminated NRRC's designation.

59.    Because the NOIT makes clear that the NRRC cannot remedy this untimely payment, it will be terminated.

60.    No provision of law stays the effect of the termination during an administrative appeal.

61.    Termination will put at risk the processing of approximately 515 pending immigrant visa petitions for noncitizens who invested between $500,000 and $800,000 each in projects in Montana associated with the NRRC.

62.    Termination is an existential risk to the NRRC because investors will associate with a new regional center or invest in a new commercial enterprise

under 8 U.S.C. § 1153(b)(5)(M)(ii). Either way, the NRRC will not be able to withstand such a blow.

63.    Termination puts at risk $1.7 billion of job-creating projects currently underway, which are relying on these EB-5 investments as a source of affordable capital given today's interest rates.

64.    USCIS's termination of NRRC's designation violates regulatory, statutory, and constitutional process; thus, it must be enjoined or set aside.

## CAUSE OF ACTION
### (APA – Violation of the Administrative Procedure Act)

65.    USCIS's termination is an adverse final agency action for which there is no other adequate remedy in court. 5 U.S.C. § 704.

66.    This Court is the final arbiter on the proper interpretation of the Act, USCIS's regulations, and the U.S. Constitution, and it need not give USCIS's interpretation—even of an ambiguous statute or regulation—controlling weight. *See Loper Bright Enterprises v. Raimondo*, — U.S. —, 144 S. Ct. 2244 (2024).

67.    This Court has authority to set aside agency actions that are in violation of required regulatory, statutory, or constitutional process. 5 U.S.C. § 706(2).

68.    As a threshold issue, USCIS's termination violates NRRC's regulatory process rights under 8 C.F.R. § 204.6(m)(6)(ii) because

　　　　a.    § 204.6(m)(6)(ii) requires USCIS to provide a timely notice of intent to terminate, which gives NRRC a meaningful opportunity to respond

and remedy any late payments for good faith mistakes prior to
termination;

b. § 204.6(m)(6)(ii) does not require payment of the Integrity Fee and
USCIS's March 3, 2023 notice does not amend this regulation;

c. § 204.6(m)(6)(ii) requires evidence that the NRRC "no longer serves
the purpose of promoting economic growth, including increased
export sales, improved regional productivity, job creation, and
increased domestic capital investment," but USCIS does not seek to
terminate the NRRC on any of these grounds;

d. § 204.6(m)(6)(ii) requires evidence that the NRRC has violated
§ 204.6(m)(6)(i)(B), but USCIS does not seek to terminate NRRC
based on a violation of § 204.6(m)(6)(i)(B); and

e. Other bases that the NRRC will develop during litigation.

69.    In addition and in the alternative, USCIS's termination violates NRRC's
statutory process rights under 8 U.S.C. § 1153(b)(5)(J)(iv) because:

a. § 1153(b)(5)(J)(iv) requires USCIS to issue a late payment notice
before termination of designation;

b. § 1153(b)(5)(J)(iv) requires USCIS provide the NRRC a meaningful
opportunity to respond which includes an opportunity to remedy any
good faith non-timely payment;

      c.  § 1153(b)(5)(J)(iv) requires USCIS to provide the NRRC a timely

notice that gives it sufficient time to make a timely payment prior to

termination; and

      d.  Other bases that the NRRC will develop during litigation.

70.    In addition and in the alternative, USCIS's termination violates NRRC's

procedural Due Process rights under the Fifth Amendment of the U.S. Constitution.

71.    The NRRC has a legitimate claim of entitlement to its USCIS designation

originally issued in 2011 and re-issued in May of 2024 because such designation is

a nondiscretionary benefit created by statute or regulation.

72.    To deprive the NRRC of its designation, as a threshold issue, USCIS must

provide it actual notice, not merely constructive notice, because the constructive

notice is not reasonably calculated to notify specific regional center of untimely

payments. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314

(1950) (holding constructive notice is insufficient to satisfy Due Process); *see also*

*Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 797 (1983) (same); *Walker v.*

*City of Hutchinson*, 352 U.S. 112 (1956) (same); *Schroeder v. City of New York*,

371 U.S. 208 (1962) (same); *Greene v. Lindsey*, 456 U.S. 444 (1982) (same);

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13–15 (1978) (same); *Eisen*

*v. Carlisle & Jacquelin*, 417 U.S. 156, 174–175 (1974) (same); *Bank of Marin v.*

*England*, 385 U.S. 99, 102 (1966) (same); *Covey v. Somers*, 351 U.S. 141, 146–147

(1956) (same); *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296–

297 (1953) (same).

73.    To the extent *Mullane* is not dispositive, *Matthews v. Eldridge*, 424 U.S. 319

(1976) requires actual notice of late payment with time to cure.

74.    Under *Matthews*, USCIS's termination process is unconstitutional:

> [T]he specific dictates of due process generally requires consideration
> of three distinct factors: [1] the private interest that will be affected by
> the official action; [2] the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable value, if any, of
> additional  or  substitute  procedural  safeguards;  and  [3]  the
> Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute procedural
> requirement would entail.

*Id.* at 335

75.    Here, the private interest affected here is substantial. The NRRC will go out

of business without its designation. It is like taking a liquor license away from a

liquor store; it cannot operate. Thus, NRRC's interest here is nothing short of its

existence.

76.    Second, USCIS's current strict liability interpretation and failure to provide

actual notice with time to cure any good faith nonpayment is incredibly high. Here

it happened despite a sophisticated business transaction. But under USCIS's

process, a regional center that sends the integrity fee timely, but gets lost in the

mail, is subject to termination if it does not show up by December 30 of the

relevant fiscal year. This punishes good faith regional centers for actions outside its control.

77.    The probable value of a timely notice of late payment or nonpayment with sufficient time to respond and cure the nonpayment is not an additional step. It is a matter of timing; it requires nothing more than a notice before December 30 of each fiscal year. Congress envisioned a two-step process for termination: step 1 would be notice and assessment of a late penalty; step 2 would be termination for those who receive such notice and refuse to pay the Integrity Fee.

78.    Finally, the Government would benefit for these additional steps because good faith regional centers who intended to pay but failed to do so despite their good faith efforts or mistakes would pay into the Integrity Fund. It would increase the revenue to the Integrity Fund at very little to no additional cost to USCIS.

79.    USCIS's NOIT violates NRRC's regulatory, statutory, and constitutional process rights.

80.    Finally, to the extent USCIS has not violated NRRC's procedural rights, USCIS's termination is arbitrary and capricious because it fails to mention the impact of its Form I-956 approval; it fails to give NRRC an opportunity to remedy the untimely payment; it fails to consider important aspects of the problem; and its strict liability interpretation of the Act is unlawful.

81.    This Court must enjoin it and set it aside.

**PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:**

82.    Take jurisdiction over this case;

83.    Declare USCIS's NOIT as violative of the NRRC's procedural rights;

84.    Enter a temporary restraining order or preliminary injunction, enjoining USICS from terminating the NRRC's regional center designation;

85.    Enter a permanent injunction from USCIS terminating NRRC's regional center designation for the reasons in the current NOIT;

86.    Set aside the NOIT;

87.    Compel USCIS to issue procedurally proper notice that gives the NRRC a meaningful opportunity to respond and cure the untimely payment of the Integrity fee; and

88.    Enter all other orders that justice requires.

Dated this 15th day of July, 2024.

By: */s/Ian McIntosh*
    Ian McIntosh
    Crowley Fleck PLLP

    *and*

    Brad Banias (*Pro Hac Vice Forthcoming*)
    Banias Law, LLC
    602 Rutledge Avenue
    Charleston, SC 29403
    *brad@baniaslaw.com*
    *Attorneys for Plaintiff*