Ian McIntosh
CROWLEY FLECK PLLP
P.O. Box 10969
Bozeman, MT 59719-0969
Telephone: (406)556-1430
imcintosh@crowleyfleck.com

Brad Banias (*Pro Hac Vice Forthcoming*)
Banias Law, LLC
602 Rutledge Avenue
Charleston, SC 29403
Telephone: (843)352-4272
*brad@baniaslaw.com*

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| NORTHERN ROCKIES REGIONAL CENTER, LLC, | Case No. |
| Plaintiff, | **DECLARATION OF MATTHEW KIDD** |
| v. | |
| DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, | |
| Defendant. | |

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the following is true and correct:

1.      I am over 18-years old and I am competent to make this declaration.

2.      I have personal knowledge of the facts herein.



3.      I am the owner of Northern Rockies Regional Center, LLC ("NRRC").

4.      The NRRC was organized under the laws of Montana on May 26, 2010.

5.      The NRRC then sought designation as regional center for purposes of pooling investments by foreign investors seeking lawful permanent residence under 8 U.S.C. § 1153(b)(5) ("EB-5 Program"). The Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, § 610, 106 Stat. 1828, P.L.102–395 (Oct. 6, 1992);[1] 8 C.F.R. § 204.6(e).

6.      United States Citizenship and Immigration Services ("USCIS") approved NRRC's application and designated it as a regional center on April 11, 2011.

7.      Under its designation, NRRC was permitted to associate with new commercial enterprises seeking to do real estate development throughout the entire state of Montana.

8.      Since its designation, the NRRC has sponsored six different EB-5 investments in Montana, leading to more than $488 million in direct foreign investment in Montana and creating more than 7,500 jobs for lawful workers in Montana.

---

[1] Though originally designated as a "pilot program," the Regional Center model has been in place since 1992 (with occasional, innocuous gaps due to recurring sunset provisions), and congress removed the word "pilot" in 2012. *See* Policy Memo, USCIS, PM-602-0083, EB-5 Adjudications Policy, (May 30, 2013).

*Declaration of Matthew Kidd - 2*

9.      The NRRC is one of the most successful regional centers in the history of the EB-5 program.

10.     Over its nearly 15-year run, the NRRC has consistently and successfully complied with all statutory, regulatory, and policy guidelines to remain in good standing with USCIS.

11.     Maintaining its USCIS designation is a top priority for the NRRC. Without its designation, it cannot participate in the EB-5 program; its current investors cannot get their lawful permanent residency; and it cannot pursue new investors for its ongoing or future projects.

12.     The NRRC timely paid USCIS the integrity fee for fiscal year 2023 on March 27, 2023.

13.     Around that time the NRRC had entered negotiations for its sale to me.

14.     A regional center must file a request for an amendment to its designation *before* significant changes to its structure, ownership, or administration. 8 U.S.C. § 1153(b)(5)(E)(vi)(I).

15.     Because NRRC's designation is its key asset, on June 16, 2023, the NRRC filed a Form I-956, Application for Regional Center Designation to request an amendment to its prior regional center approval to permit changes in its ownership and business structure:

> Specifically, the Form I-956 requests the following . . . [a]pproval to change the regional center's ownership, organizational structure, or

*Declaration of Matthew Kidd - 3*

administration, including the sale of the regional center, or other arrangements that would result in individuals not previously subject to the requirements under INA § 203)b_(5)(H) becoming involved with the regional center.

16.   USCIS assigned the application receipt number INF2300003994.

17.   On October 16, 2023, the transaction closed without issue as the NRRC had outlined in its Form I-956.

18.   During the transaction, the seller represented that the NRRC had no indebtedness or liabilities.

19.   After the closing, the NRRC continued to solicit new investors for new projects in Montana.

20.   On May 3, 2024, USCIS approved the NRRC's Form I-956, approving the change in ownership.

21.   During the adjudication of its Form I-956, USCIS did not give the NRRC any actual notice that it had not timely paid the integrity fee for Fiscal Year 2024.

22.   In its approval, in fact, USCIS notified the NRRC that it would be responsible for paying an integrity fee on or by October 1 and, if the NRRC did not pay it timely, USCIS would first penalize it and *then* terminate it for nonpayment:

> Every year on October 1, each designated regional center with 20 or fewer total investors in the preceding fiscal year in its NCEs must pay $10,000 to the EB-5 Integrity Fund (the "Fund"). Designated regional centers with 21 or more petitioners in the preceding fiscal year must pay $20,000 to the Fund.

*Declaration of Matthew Kidd - 4*

> USCIS will impose a reasonable penalty, which shall be deposited into the Fund, if the Regional Cetner does not pay the fee required within 30 days after the date on which such fee is due. USCIS may sanction, and ultimately terminate, an y regional center that does not pay the fee required within 90 days after the date on which the fee is due.

23. The NRRC had no reason to believe it was not in compliance with *all* statutory, regulatory, and policy guidelines after USCIS approved its Form I-956 on May 3, 2024.

24. On June 27, 2024, USCIS issued the NRRC a Notice of Intent to Terminate ("NOIT").

25. The NOIT noted that the NRRC was originally designated on April 11, 2011, but it made no mention of the May 3, 2024, approved amendment to its designation.

26. The NOIT requires the NRRC to send in proof that it paid the fiscal year 2024 integrity fee on or by December 30, 2023, or else it will terminate the NRRC's designation:

> USCIS must terminate any regional center that does not pay the fee required within 90 days aft er the date on which the fee is due. INA 203(B)(5)(J)(iv)(II). Therefore, USCIS must take steps to terminate any regional center that, on or before December 30, 2023, has not paid the required EB-5 Integrity Fund fees for fiscal year 2023 and/or fiscal year 2024.

> As of the date of this notice, USCIS records indicate that the [NRRC] did not pay the required EB-5 Integrity Fund fee for Federal fiscal year 2024. Due to the Regional Center's failure to pay the required EB-5 Integrity Fund fee within 90 days of it becoming due, USICS intends to

*Declaration of Matthew Kidd - 5*

terminate the designation of the regional center for participation in the Program as required by INA 203(b)(5)(J)(iv)(II).

27.    While the NOIT is styled as a "notice," USCIS noted that, if the NRRC indeed had not timely paid, it now had no opportunity to cure such oversite:

> **The [NRRC] must provide evidence that it submitted its required EB-5 Integrity Fund fee payment within the applicable payment period. USCIS will reject EB-5 Integrity Fund fee payments for fiscal year 2023 and fiscal year 2024 received after Dec. 30, 2023, including those made in response tot this Notice of Intent to Terminate.**

28.    Upon receipt of the NOIT, I investigated and learned that the prior owners of the NRRC had not paid the integrity fee for fiscal year 2024, despite their claims during the closing of the transaction.

29.    Under the terms of the NOIT, USCIS will terminate the NRRC because it did not pay the fiscal year 2024 integrity fee on or by December 30, 2023.

30.    To be clear, the NRRC is willing to pay the integrity fee immediately.

31.    If USCIS had provided actual notice of the unpaid integrity fee, the NRRC would have paid it.

32.    But the NRRC never received actual notice that it had not paid the fee timely prior to December 30, 2023.

33.    USCIS never imposed a penalty for untimely payment. Instead, it terminated NRRC's designation.

*Declaration of Matthew Kidd - 6*

34.    Because the NOIT makes clear that the NRRC cannot remedy this untimely payment, it will be terminated.

35.    No provision of law stays the effect of the termination during an administrative appeal.

36.    The termination will put at risk the processing of approximately 515 pending immigrant visa petitions for noncitizens who invested between $500,000 and $800,000 each in projects in Montana associated with the NRRC.

37.    The denial of these applications is an existential risk to the NRRC because, upon denial, these investors could demand return of their capital or associate with a new regional center. Either way, the NRRC will not be able to withstand such a blow.

38.    Further, the termination puts at risk $1.7 billion of job-creating projects currently underway, which are relying on these EB-5 investments as a source of affordable capital.

39.    Because typical commercial interest rates are so high, it is not feasible to replace the EB-5 capital at a rate feasible for the underlying projects.

40.    Termination—even if the NRRC is able to file new applications with USCIS and get them approved in a timely fashion—will also lead to reputational harm in the market for EB-5 investments. EB-5 investors are a very sophisticated group. Obviously, they want to invest in strong, safe regional centers with good projects.

*Declaration of Matthew Kidd - 7*

If the NRRC is terminated, USCIS will post it on its public website that contains the "List of EB-5 Terminated Regional Centers" at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/eb-5-immigrant-investor-regional-centers/regional-center-terminations (last visited July 15, 2024).

41.    The harm from a termination is indeed irreparable to the NRRC's reputation, good will, and marketing efforts.

42.    Because of the amount of money involved, the number of investors, and the sudden nature of the termination, the termination will catalyze endless litigation against the NRRC, its current owners, its previous owners, the underlying projects, and the law firms representing these entities.

43.    Again, if the NRRC had actual notice of the unpaid integrity fee and an opportunity to pay it, with or without a reasonable penalty, the NRRC would have—or will—pay it immediately.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2024    _____
Matthew Kidd
Owner
Northern Rockies Regional Center, LLC

*Declaration of Matthew Kidd - 8*