BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
GLENN M. GIRDHARRY
Assistant Director
AARON S. GOLDSMITH
Senior Litigation Counsel
ALESSANDRA FASO
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 305-9855
Fax: (202) 305-7000
Email: alessandra.faso@usdoj.gov

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| NORTHERN ROCKIES REGIONAL CENTER, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UR M. JADDOU, DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, <br><br> Defendant. | CV 24-99-M-DWM <br><br> DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

    **A.**    **Statutory and Regulatory History**........................................................3

        1.    *The EB-5 Immigrant Investor Visa Program* ...............................3

        2.    *The EB-5 Regional Center Program and the EB-5 Reform and Integrity Act of 2022* ........................................................................4

        3.    *The Integrity Fund Annual Fee Requirement*................................6

    **B.**    **Factual and Procedural History** .........................................................7

LEGAL STANDARD ...........................................................................................8

ARGUMENT .........................................................................................................9

    A.    **This Court Should Deny NRRC's Motion for a Preliminary Injunction Because NRRC Cannot Demonstrate a Substantial Likelihood of Success on the Merits** ..................................................9

        1.    *The INA Requires USCIS to Terminate NRRC's Regional Center Designation for Failure to Pay the Integrity Fee* ..........9

        2.    *USCIS's Issuance of the NOIT Does Not Violate the APA* ........13

        3.    *USCIS's Issuance of the NOIT Did Not Violate Due Process* ...15

        4.    *NRRC Failed to Exhaust its Administrative Remedies* ..............20

    **B.**    **This Court Should Deny NRRC's Motion for a Preliminary Injunction Because It Fails to Demonstrate That NRRC Would Suffer Imminent Irreparable Harm in the Absence of Judicial Intervention**...................................................................................21

**C.      The Balance of Equities and the Public Interest Do Not Favor Injunctive Relief** ...................................................................................25

**CONCLUSION**..............................................................................................26

**CERTIFICATE OF COMPLIANCE** ...................................................................28

**CERTIFICATE OF SERVICE** .........................................................................29

**INTRODUCTION**

Defendant, Ur M. Jaddou, Director of U.S. Citizenship and Immigration Services ("USCIS") hereby opposes Plaintiff's Motion for a Preliminary Injunction (ECF No. 6) (hereinafter, "Pl.'s Mot." or "Plaintiff's Motion"). The Court should deny Northern Rockies Regional Center ("NRRC"), Motion because it fails to establish any of the factors necessary for the extraordinary relief it seeks.

This matter concerns the EB-5 Reform and Integrity Act of 2022 ("RIA"), which Congress passed in order to reform the EB-5 program and strengthen its integrity as a means of injecting foreign capital into the U.S. economy and creating jobs for U.S. workers while providing a pathway for qualifying foreign investors to pursue lawful permanent residence. The RIA revised general eligibility requirements for the EB-5 program while significantly reforming and adding new integrity provisions to the EB-5 regional center program, primarily designed to strengthen oversight and combat fraud. Regional centers are entities designated to participate in the EB-5 regional center program and concentrate pooled investment in particular areas. Regional centers that USCIS had previously approved under the former (and now repealed) statute authorizing the EB-5 regional center program, such as NRRC, remain designated as regional centers to continue participating in the EB-5 regional center program as reformed by the RIA and codified into the Immigration and Nationality Act ("INA"). As a result, previously designated regional centers must

1

pay the annual EB-5 Integrity Fund ("Integrity Fund") fee, whose funds will be used by the agency to help ensure the integrity of the EB-5 program.

NRRC seeks preliminary injunctive relief from this Court to obtain an exception from compliance with the statutorily imposed deadline to pay the Integrity Fund fee, which is required to continue to participate in the EB-5 regional center program. NRRC's Motion lacks merit and the Court should deny it in its entirety. At the threshold, NRRC has failed to demonstrate a likelihood of success on the merits of its claim. The statutory provisions of the INA, as amended by the RIA, are clear that USCIS "shall… terminate the designation of any regional center that does not pay the fee required under clause (ii) within 90 days after the date on which such fee is due." 8 U.S.C. § 1153(b)(5)(J)(iv). The statute provides no means of accepting late payment. Furthermore, USCIS's procedures for notifying regional centers of the deadline to pay the Integrity Fund fee and the issuance of the Notice of Intent to Terminate ("NOIT") for failure to comply does not violate any provision of the RIA, the INA, the Administrative Procedure Act ("APA"), or the Due Process Clause of the Constitution. Finally, the INA is clear that "no court shall have jurisdiction to review a determination under [8 U.S.C. § 1153(b)(5)] until the regional center, its associated entities, or the alien investor has exhausted all administrative appeals." 8 U.S.C. § 1153(b)(5)(P)(ii). NRRC has not done so and as such, NRRC cannot succeed on the merits of its claim.

2

Second, NRRC has failed to establish that it will suffer an immediate, irreparable injury absent Court intervention. The crux of NRRC's assertion of harm is that if USCIS follows the statutory mandate to terminate regional centers for failure to pay the Integrity Fund fee within 90 days of the due date, NRRC will lose profits and suffer economic damages. But lost profits and purported economic harm are not irreparable injuries sufficient for entry of a preliminary injunction. Nor is the alleged reputational damage NRRC fears as a result of its noncompliance. This lack of irreparable injury is reinforced by the fact that terminated regional centers may immediately reapply for designation.

Finally, the equities favor the Government, as USCIS implementing Congress's mandate to ensure that all regional centers seeking to participate in the EB-5 regional center program comply with the newly established reform and integrity requirements of the INA outweighs any temporary economic harm that may befall NRRC while USCIS administers the program under the new provisions of the law. For these reasons, the Court should deny NRRC's motion in its entirety.

## BACKGROUND

### A.    Statutory and Regulatory History

#### 1.    The EB-5 Immigrant Investor Visa Program.

As part of the Immigration Act of 1990, Congress established the employment-based, fifth preference (hence, "EB-5") immigrant investor visa

program. *See* Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)). Under the EB-5 program, now within the INA, lawful permanent resident ("LPR") status is available to foreign nationals[1] who invest at least $1,050,000 in a new commercial enterprise ("NCE") that will create at least 10 full-time jobs in the United States. *See* 8 U.S.C. § 1153(b)(5)(A). Congress intended for the EB-5 visa program to provide a unique path for foreign national investors to immigrate permanently to the United States by making legitimate investments, creating new employment for U.S. workers, and infusing new, lawfully acquired capital into the country. *See* S. Rep. No. 101-55 at 2, 21 (1989). If a foreign national invests in an NCE located in a Targeted Employment Area ("TEA"), which includes certain rural areas and areas of high unemployment, or in an infrastructure project the minimum required investment is reduced to $800,000. *See* 8 U.S.C. § 1153(b)(5)(B).

> 2.   *The EB-5 Regional Center Program and the EB-5 Reform and Integrity Act of 2022.*

In 1992, Congress expanded the EB-5 program by establishing the regional center "pilot program," which authorized "regional center[s] in the United States … for the promotion of economic growth, including increased export sales, improved regional productivity, job creation, or increased domestic capital investment." *See*

---

[1] This brief uses the term "foreign national" as equivalent to the statutory term of "alien" within the INA.

4

Departments of State, Justice, and Commerce, the Judiciary and Related Agencies Appropriations Act of 1992, Pub. L. No. 102-395, § 610(a) (Oct. 6, 1992) (codified at 8 U.S.C. § 1153 note, repealed as discussed below). This program allowed economic entities to seek regional center status with USCIS for the purpose of concentrating pooled investment in defined economic zones. *See id*.; 8 C.F.R. § 204.6(e).

In March 2022, Congress passed the RIA, which made significant changes to the Regional Center Program. *See* Div. BB of the Consolidated Appropriations Act of 2022, Pub. L. 117-103, 136 Stat. 49 (Mar. 15, 2022). The RIA revised general eligibility requirements for the EB-5 program, repealed statutory authorization for prior Regional Center Program while also substantially reforming and codifying the Regional Center Program in section 203(b)(5) of the INA (8 U.S.C. § 1153(b)(5)) and added significant new integrity provisions to deal with the perception that the Regional Center Program was being abused. *See Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 378 (D.C. Cir. 2020) (Henderson, J., concurring) (warning of the EB-5 program's susceptibility to fraud and abuse and expressing hesitation "to undo USCIS's efforts designed to ensure the integrity and further the purpose of the program"). This reformed Regional Center Program was reauthorized through September 30, 2027, in order to make EB-5 visas available to qualified immigrants "participating in a program implementing this paragraph that involves a regional

center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment." 8 U.S.C. § 1153(b)(5)(E)(i).

>    3.    *The Integrity Fund Annual Fee Requirement*

Among the many changes that Congress made to the Regional Center Program through the RIA, Congress created the Integrity Fund, *see* 8 U.S.C. § 1153(b)(5)(J)(i), whose funds would be used to detect and investigate fraud, ensure regional center compliance with immigration laws, conduct audits and site visits, and for other specified purposes, *see* 8 U.S.C. § 1153(b)(5)(J)(iii). To finance the Integrity Fund, Congress authorized the Secretary of Homeland Security to collect an annual fee (the "Integrity Fund fee") from regional centers on October 1, 2022 "and each October 1 thereafter." *Id.* § 1153(b)(5)(J)(ii)(I). The size of the fee varies depending on the number of total investors investing in the regional center's NCEs. *Id.* A regional center "with 20 or fewer total investors in the preceding fiscal year in its new commercial enterprises" must pay $10,000 yearly, *id.* § 1153(b)(5)(J)(ii)(I)(bb), while regional centers with more than 20 investors are required to pay $20,000, *id.* § 1153(b)(5)(J)(ii)(I)(aa). The INA further establishes consequences for failure to pay the Integrity Fund fee by directing USCIS to assess "a reasonable penalty" upon any regional center that "does not pay the fee ... within

6

30 days after the date on which such fee is due." *Id.* § 1153(b)(5)(J)(iv)(I). And, relevant to this litigation, if a regional center fails to pay the Integrity Fund fee within 90 days of the October 1 due date, USCIS is required to "terminate the designation" of the non-compliant regional center. *Id.* § 1153(b)(5)(J)(iv)(II).

**B.    Factual and Procedural History**

On March 2, 2023, DHS published a notice in the Federal Register outlining the due dates for the fiscal year ("FY") 2023 and FY 2024 annual Integrity Fund fee. *See* Notice of EB-5 Regional Center Integrity Fund Fee, 88 Fed. Reg. 13141 (Mar. 2, 2023). In light of the fact that USCIS was still in the process of implementing the new statute, the notice explained that "[t]he first fee payment of the fees announced in this notice must be paid beginning on March 2, 2023 and before April 3, 2023. For FY 2024 and each year thereafter, the fees must be paid between October 1st and October 31st of the same year." *Id.* at 13141. Further, given that the statute requires USCIS to impose a "reasonable penalty" fee for late payment, and the agency had yet to determine what the penalty would be, USCIS also noted that it would not be charging a penalty "until [the agency] take[s] further action to set the amount of the late fee, as well as the process for collecting the late fee." *Id.* at 13143.

Shortly thereafter, NRRC paid the Integrity Fund fee for FY 2023 on March 27, 2023.[2] On May 3, 2024, USCIS approved NRRC's Form I-956 Application for Regional Center designation amendment which requested a change in ownership. The adjudication of that application did not concern payment of the annual Integrity Fund fee. On June 27, 2024, USCIS issued the NOIT to NRRC, informing NRRC that it intended to terminate NRRC's regional center designation due to its failure to pay the annual Integrity Fund Fee for FY 2024. Pl.'s Mot., Exh. C. On July 15, 2024, NRRC filed this action. *See generally* ECF No. 1.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008), one that "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (quotation omitted). To succeed on a motion for a preliminary injunction, a plaintiff must show that "he is likely to succeed on the merits; that he

---

[2] On September 29, 2023, the agency extended the FY 2023 deadline to align with the FY 2024 deadline, posting an alert, stating "[USCIS has] still been accepting Integrity Fund Fee payments and, because information about the due dates and penalties might not have been clear, we will continue to collect the EB-5 Integrity Fund fee for fiscal year 2023 from all regional centers that have not yet paid the fee with a due date of Oct. 1, 2023." *See* EB-5 Integrity Fund, https://www.uscis.gov/IntegrityFund (last updated May 9, 2024). In addition to the implementation of the new statutory provisions delaying the initial due date, the agency continues to defend ongoing litigation challenging the applicability of the Integrity Fund fee to regional centers designated prior to the RIA. *See Sunshine State Regional Center Inc. v. Jaddou*, 23-cv-60795, (S.D. Fla. May 30, 2023) (on appeal); *EB5 Holdings, Inc. v. Jaddou*, No. 23-cv-1180, 2024 WL 687945 (D.D.C. Feb. 20, 2024).

is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in his favor, and that an injunction is in the public interest." *League of Wilderness Defs. v. Connaughton*, 752 F.3d 755, 759 (9th Cir. 2014) (citing *Winter*, 55 U.S. at 20).

## ARGUMENT

**A.     This Court Should Deny NRRC's Motion for a Preliminary Injunction Because NRRC Cannot Demonstrate a Substantial Likelihood of Success on the Merits**.

NRRC seeks a preliminary injunction enjoining the NOIT, claiming that "it violates NRRC's statutory and Constitutional procedural rights." Pl.'s Mot. at 11. However, as set forth below, USCIS's issuance of the NOIT to NRRC for failure to pay the Integrity Fund fee in a timely manner is required by the INA (as amended by the RIA), and accordingly does not violate the APA or run afoul of procedural Due Process protections.

> 1.     *The INA requires USCIS to terminate NRRC's regional center designation for failure to pay the Integrity Fund fee.*

As a matter of law, NRRC cannot succeed on the merits of its claim because the plain language of the INA requires USCIS to terminate NRRC's regional center designation because of its failure to pay the Integrity Fund fee within 90 days of the statutory due date. Congress has specified that USCIS "shall" terminate the designation of any regional center that does not pay the required Integrity Fund fee "within 90 days after the date on which such fee is due." 8 U.S.C. §

9

1153(b)(5)(J)(iv)(II). Here, it is undisputed that NRRC failed to pay the Integrity Fund fee for FY 2024 by December 30, 2023 (i.e., within 90 days of the date the fee was due on October 1, 2023). *See* ECF No. 1 ¶ 53. Because more than 90 days had passed from the statutory due date of October 1, 2023, under the plain language of 8 U.S.C. § 1153(b)(5)(J)(iv)(II), USCIS is required to terminate the designation of NRRC. As such, USCIS's issuance of the NOIT to NRRC complies with the express requirements of the INA to terminate NRRC's regional center designation.

NRRC argues that USCIS's NOIT was procedurally defective because it did not provide NRRC with an opportunity to cure its non-payment of the annual Integrity Fund fee. *See* Pl.'s Mot. at 13-14. But NRRC does not, and cannot, point to any authority in the INA or the RIA requiring USCIS to provide NRRC with an opportunity to cure non-payment of the annual Integrity Fund fee before terminating its designation for non-payment. Thus, this argument fails as a matter of law.

NRRC disagrees, pointing to 8 U.S.C. § 1153(b)(5)(J)(iv). Pl.'s Mot. at 12-13. Specifically, NRRC contends that this provision requires USCIS to first impose a penalty upon regional centers who do not pay the Integrity Fund fee within 30 days of its due date, and only if the regional center fails to pay within 90 days of the due date, terminate its designation for nonpayment. *Id*. at 12-13. As an initial matter, the plain language of the statute does not explicitly or implicitly require pre-termination notice for imposition of any late fee penalty.  While notice of a late fee penalty could

satisfy applicable due process considerations were it to be imposed, the plain language of the statute does not require any such hypothetical notice to be issued at any particular time and certainly not within a very narrow 60-day period between the 30-day overdue date in which a late fee may imposed and the 90-day overdue date for which the statue separately contemplates termination of the regional center's designation. And, importantly, the agency's decision to refrain from assessing a penalty fee at this time is clearly outlined in the Federal Register notice as an exercise of the agency's "discretionary enforcement authority." 88 Fed. Reg. at 13143. The notice explains that USCIS will refrain from assessing the late penalty because:

> (1) the Fund and Integrity Fund fee are new program requirements; and (2) USCIS must determine an amount that is a "reasonable" penalty to charge. Therefore, DHS has decided and USCIS is announcing that, as a matter of discretionary enforcement policy, we will not charge a late fee until we take further action to set the amount of the late fee, as well as the process for collecting the late fee.

88 Fed. Reg. 13143.

Moreover, the Federal Register notice confirmed that "USCIS will, as authorized by the 2022 Act, terminate the designation of any regional center that does not pay the full fee within 90 days after the date on which such fee is due[.]" *Id.* USCIS's process for enforcing 8 U.S.C. § 1153(b)(5)(J)(iv) is clear: USCIS would not assess a penalty for late payments at this time, but would still terminate regional centers under 8 U.S.C. § 1153(b)(5)(J)(iv) for failure to pay within 90 days of the due date. NRRC's attempt to argue that USCIS's decision to not assess a

penalty before noticing a regional center's termination violates the RIA (or INA) therefore fails.

NRRC also contends that USCIS should have provided notice to NRRC's new ownership that NRRC, under its prior ownership, had not yet paid the annual Integrity Fund fee. *See* Pl.'s Mot. at 17 (arguing that the issuance of the NOIT "effected an unfair surprise on the NRRC" because it had "no reason to doubt it was not in compliance with all statutes, regulations, and policies controlling EB-5 regional centers"); *see id*. at 17-18. Thus, while NRRC, under its prior ownership, may have been on notice of its obligation to pay this fee, the new ownership of NRRC was not. *See id*.; Pl.'s Mot., Exh. A at ¶ 23.

That argument fails. To be clear, the sale of NRRC occurred on October 16, 2023, more than two months in advance of the December 30, 2023 date by which payment of the annual Integrity Fund fee must have been made to avoid termination. Pl.'s Mot., Exh. A at ¶ 17. Thus, at the time the transaction closed, NRRC was still in compliance because the annual Integrity Fund fee was not yet 90 days overdue. Here, while "the seller represented that the NRRC had no indebtedness or liabilities," Pl.'s Mot. at 7, NRRC's new ownership was not exempt from ensuring it remained in compliance with the INA, despite the purported sophistication of the business transaction. *Id.* at 22. Failure to comply with such a fundamental statutory requirement for participation in the Regional Center Program is inexcusable for

12

anyone seeking to own and operate a regional center whose designation to participate in the Regional Center Program is solely derived from that statute and its requirements.

Rather, NRRC contends that on May 3, 2024, when USCIS approved NRRC's Form I-956, Application for Regional Center Designation, requesting an amendment to its designation to permit changes in its ownership and business structure, USCIS was legally obligated to remind NRRC that it had not paid the annual Integrity Fee that was due on October 1, 2023. *Id.* at ¶¶ 15, 20-21. But again, NRRC does not, and cannot, point to any statutory provision that imposes such an obligation on USCIS. Even if USCIS had advised NRRC on May 3, 2024, that it had failed to pay the annual Integrity Fund fee that was due on October 1, 2023, such notice would still have occurred more than 90 days after the statutory due date, meaning that USCIS would still be obligated by statute to terminate NRRC's designation. *See* 8 U.S.C. § 1153(b)(5)(J)(iv). Thus, NRRC's statutory argument fails, and NRRC's Motion is unlikely to succeed on the merits.

    2.    *USCIS's Issuance of the NOIT Does Not Violate the APA.*

NRRC's APA argument similarly fails. NRRC contends that the APA requires administrative agencies to provide regulated entities with an opportunity to achieve compliance before taking adverse action. Pl.'s Mot. at 14-15 (citing 5 U.S.C. § 558(c)). However, NRRC's reliance on 5 U.S.C. § 558(c) is misplaced.

First, a regional center designation is not a "license" under the APA. *See* 5 U.S.C. § 551 (defining a "license" as "the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission."). The licensing provision of the APA has never been understood to cover statutory and regulatory law governing immigration programs, as they are instead governed by the detailed procedural requirements of the INA. The INA does not refer to a regional center designation as a "license" under 5 U.S.C. § 551, and no decision has ever held to the contrary. NRRC asserts that regional center designations fit the definition of "license" under Section 551 because it "is extremely broad." Pl.'s Mot. at 15. But they provide no rationale for disregarding the detailed provisions of the INA.

Even assuming *arguendo* that a regional center designation constitutes a license under the APA, USCIS's issuance of the NOIT did not violate Section 558(c). This provision states: "the withdrawal, suspension, revocation, or annulment of a license is lawful only if … the licensee has been given—(1) notice by the agency in writing of the facts or conduct which may warrant the action; and (2) opportunity to demonstrate *or* achieve compliance with all lawful requirements." (emphasis added). USCIS satisfied any obligation it may have had under the APA by providing a notice giving NRRC an "an opportunity to demonstrate … compliance," in other words by demonstrating that it made payment of the annual Integrity Fund fee by

14

December 30, 2023 (i.e. within 90 days of the October 1, 2023, due date). Far from requiring that USCIS provide an opportunity to cure contrary to the plain language of the INA, 5 U.S.C. § 558(c) indicates that the APA requires no such opportunity. Similarly, none of the cases cited by NRRC discussing the APA, Pl.'s Mot. at 14-17 (collecting cases), require that an agency provide an opportunity to cure before taking adverse action. NRRC would have this Court hold USCIS to an extra-statutory requirement with no support in the law. Thus, NRRC's APA argument is of no moment.

### 3. USCIS's Issuance of the NOIT Did Not Violate Due Process.

NRRC's Due Process argument is unavailing. The crux of NRRC's argument is that USCIS violated its procedural Due Process rights by not providing NRRC with a reminder of its obligation under 8 U.S.C. § 1153(b)(5)(J)(iv) to pay the annual Integrity Fund fee. *See* Pl.'s Mot. at 18-23. This argument fails, as it requests this Court to order USCIS to go above and beyond the requirements of due process.

The Due Process Clause of the Fifth Amendment of the U.S. Constitution protects against the deprivation of "life, liberty, or property." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause [.]" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To be entitled to procedural due process, a party must show a liberty or property interest in the

15

benefit for which protection is sought." *Greenwood v. FAA*, 28 F.3d 971, 975 (9th Cir. 1994) (internal citation omitted). The procedural due process inquiry involves two steps. *See Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013). The first step looks to whether the government has interfered with a liberty or property interest, and the second step asks whether the procedures used in that deprivation were constitutionally sufficient. *Id.* With respect to the second prong, due process requires "notice and an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Schneider v. County of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994) (internal quotation omitted). The Supreme Court's decision in *Mathews* provides the framework for this second step, directing courts to balance "the private interests that will be affected" by the government's action, "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards," and lastly, "the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail."  424 U.S. at 321.

Here, even assuming that NRRC has a liberty or property interest in the regional center designation, NRRC cannot establish that the notice it received was constitutionally deficient. *Id.*, at 334–35. The notice that NRRC received here was "reasonably calculated, under all the circumstances, to apprise" NRRC of its obligation to pay the Integrity Fund fee for FY 2024. *Jones v. Flowers*, 547 U.S.

16

220, 226 (2006). The INA clearly provides that USCIS "shall … terminate the designation of any regional center that does not pay the fee required … within 90 days after the date on which such fee is due." 8 U.S.C. § 1153(b)(5)(J)(iv). Moreover, the Federal Register notice clearly set forth the due dates of the Integrity Fund fees for FY 2023 and FY 2024, as well as the process USCIS would take in order to assess any late fee and terminate regional centers based on noncompliance. 88 Fed. Reg. at 13143. NRRC appears to contend that due process required USCIS to provide a reminder to the new owners of NRRC that they did not pay the Integrity Fund fee, because, according to NRRC, simply publishing a notice in the Federal Register regarding the October 1, 2023 due date does not provide NRRC with "actual notice" of the deadline. *See id*. at 18-23. But due process does not impose such a requirement. *See Dusenbery v. United States*, 534 U.S. 161, 170 (2002). Moreover, NRRC does not point to any authority for the proposition that publishing a notice of a deadline in the Federal Register is insufficient notice under the Due Process Clause. To the contrary, the Supreme Court held that "notice published in the Federal Register … was more than ample to satisfy any due process concerns." *Lyng v. Payne*, 476 U.S. 926, 942-43, (1986) (citing 44 U.S.C. § 1507, which states that publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). Nor does NRRC cite any authority for the proposition that when a statute imposes an obligation on an entity

17

to make an annual payment, the Due Process Clause requires that an agency provide a reminder notice to the entity of its statutory obligation. Thus, NRRC's argument that USCIS was required to provide it with a personalized notice of its clear statutory obligation to make the annual Integrity Fund fee fails as a matter of law. *See*, *e.g.*, *Intel Corp. v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-07596-PCP, 2024 WL 3354965, at *6 (N.D. Cal. July 10, 2024) (finding that "[t]he interests merit procedural protection, but not strong enough to require that USCIS take steps to address every possible mistake, miscommunication, or user error that could result in a deprivation of those interests.").

Here, the risk of an erroneous deprivation of any liberty or property interest using USCIS's notification procedures is minimal. The text of the INA is clear, and USCIS's Federal Register notice posted nine months before the fee was due provided regional centers with ample time to comply with the fee requirement. Notably, NRRC knew of its obligation to pay the annual Integrity Fund fee as evidenced by the fact that it previously paid this fee. *See* ECF No. 1 at ¶ 36. This is not a situation in which NRRC was unaware of its statutory obligation to pay the annual fee; rather it simply failed to make such payment for FY 2024. Indeed, "the sophistication of the parties" further supports the fact "that notice was reasonably calculated to appraise" NRRC of its obligations under the INA "and minimize the risk of erroneous deprivation." *Intel Corp.*, 2024 WL 3354965, at *7.

18

Next, NRRC argues that the due process clause mandates that regulated entities must be provided with notice and an opportunity to cure. Pl.'s Mot. at 21 (citing, *inter alia*, *Mathews*, 424 U.S. 319); *see id*. at 18-23. But the Due Process Clause is concerned with notice and *an opportunity to be heard*, not with an opportunity to cure. *See Mathews*, 424 U.S. at 335. Here, the NOIT provides NRRC with notice and an opportunity to demonstrate that it made the annual Integrity Fund fee payment within the statutorily required time period (i.e., an opportunity to be heard prior to termination). *See* Pl.'s Mot., Exh. C. Thus, the NOIT protects NRRC's private interest from the risk of erroneous termination. *See Mathews*, 424 U.S. at 335. But, here, there is no risk of erroneous termination because NRRC concedes that it failed to make the required payment by the deadline of December 30, 2023, to avoid termination (i.e. 90 days after the statutory due date of October 1, 2023). *See* ECF No. 1 at ¶ 53. Instead, the present case involves NRRC's grievance that their designation as a regional center will be terminated without an opportunity to cure. *See* ECF No. 1 at ¶ 73; Pl.'s Mot. at 22. But because neither *Mathews* nor any of the other case law presented by NRRC recognize a due process right to an opportunity to cure, NRRC's procedural due process argument should be rejected.

Finally, the government's interest in retaining these procedures is strong, and this Court "should lean heavily on the agency's expertise" in administering its programs. *Foss v. National Marine Fisheries Service*, 161 F.3d 584, 589 (9th Cir.

19

1998). In addition, requiring USCIS to provide repeated notice for each regional center who had yet to pay the Integrity Fund fee "would be an unwarranted burden." *Id.* at 590. Here, the failure of NRRC's new owner to conduct adequate due diligence about the regional center's compliance with fundamental statutory requirements for continued designation when it purchased the regional center has no bearing upon USCIS's notice procedures. USCIS provided sufficient notice to NRRC of its statutory obligation to pay the fee, and its procedures are "more than ample to satisfy any due process concerns." *Lyng*, 476 U.S. at 942-43.

For these reasons, NRRC cannot demonstrate a substantial likelihood of success under the Due Process Clause.

### 4.    *NRRC Failed to Exhaust its Administrative Remedies.*

Finally, NRRC cannot prevail on the merits of its claim because it has not exhausted its administrative remedies as outlined in the INA. While USCIS has not yet terminated NRRC, the INA is clear that "no court shall have jurisdiction to review a determination under [8 U.S.C. § 1153(b)(5)] until the regional center, its associated entities, or the [foreign national] investor has exhausted all administrative appeals." 8 U.S.C. § 1153(b)(5)(P)(ii). As such, unless and until NRRC (1) is terminated, and (2) exhausts its administrative appeals, this Court does not have the jurisdiction to review NRRC's claim. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004).

**B.      This Court Should Deny NRRC's Motion for a Preliminary Injunction Because It Fails to Demonstrate That NRRC Would Suffer Imminent Irreparable Harm in the Absence of Judicial Intervention.**

Because NRRC failed to show that it is likely that USCIS violated its statutory or constitutional rights by issuing the NOIT, it likely has "failed to establish that irreparable harm will flow from a failure to preliminarily enjoin [USCIS's] actions." *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 394 (9th Cir. 2016) (internal citation omitted). Thus, NRRC's Motion should be denied.

Here, NRRC contends that, if it is terminated, a substantial portion of its revenue will be placed at risk. *See* Pl.'s Mot. at 23. However, injunctive relief is not appropriate here because, in this Circuit, monetary injuries generally do not constitute irreparable injury. *See Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850 (9th Cir. 1985); *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). As a result, NRRC has failed to meet its burden of demonstrating irreparable harm. Moreover, to the extent that NRRC contends that it has suffered, or will suffer, monetary damages as a result of purported misrepresentations by the prior ownership of NRRC, *see* Pl.'s Mot. at 11, the proper remedy is a claim against the prior owner, not a request for injunctive relief against USCIS. *See Goldie's Bookstore, Inc. v. Superior Court of the State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (holding that "financial injury ... will not

21

constitute irreparable harm if adequate compensatory relief will be available in the course of litigation").

NRRC disagrees, contending that it is entitled to injunctive relief because if USCIS terminates its designation as a regional center, it "will close down NRRC." Pl.'s Mot. at 23; *see id*. at 23-24. It is true that courts recognize an exception to the general rule that monetary damages are insufficient to justify injunctive relief "where the loss threatens the very existence of the movant's business." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam); *see Potlongo v. Herff Jones, LLC*, 749 F. App'x 537, 538 (9th Cir. 2018) (rejecting claims of irreparable harm where "the record ... does not demonstrate that the loss of the plaintiff's] business is likely"). But, here, NRRC has provided no evidence, beyond speculation, that termination will result in NRRC being closed down. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc*., 750 F.2d 1470, 1474 (9th Cir. 1985) (holding that statements by a company president forecasting large losses again in the coming year, standing alone, were insufficient evidence to demonstrate that the company "is threatened with extinction").

To be clear, even if USCIS terminated NRRC's designation as a regional center, NRRC will continue to operate as a limited liability company. Moreover, a terminated regional center nevertheless may reapply for regional center designation as it not foreclosed from seeking redesignation solely because of prior termination.

*See* 8 U.S.C. § 1153(b)(5)(E). It is true that, if USCIS terminates NRRC's designation, individual investors may decide to withdraw. Pl.'s Mot., Exh. A at ¶¶ 40-41. But it is far from clear that they will do so or that NRRC's termination would be the sole reason for them to do so (e.g. such investors may wish to withdraw given the regional center's new ownership separate from the termination of its designation). Indeed, the INA expressly provides for good-faith investor protections in the event that a regional center is terminated, such as failing to pay the Integrity Fund fee. *See* 8 U.S.C. § 1153(b)(5)(M); *see also EB-5 Questions and Answers*, https://www.uscis.gov/working-in-the-united-states/permanent-workers/ employment-based-immigration-fifth-preference-eb-5/eb-5-questions-and-answers (last updated July 16, 2024).  Moreover, if NRRC reapplies for designation, it may nevertheless solicit new investors and continue its operations. Without more evidence on this point, NRRC has failed to meet its burden of demonstrating that it is likely that it will cease to operate in the absence of injunctive relief. *See Potlongo*, 749 F. App'x at 538.

NRRC also contends that it will suffer a separate, independent harm in the absence of injunctive relief – damage to its reputation. *See* Pl.'s Mot, Exh. A at ¶ 40 (asserting that "even if the NRRC is able to file new applications with USCIS and get them approved in a timely fashion – will also lead to reputational harm" given that "EB-5 investors are a very sophisticated group"); *see id*. at ¶¶ 40-41.

23

Termination might result in NRRC's investors learning that NRRC failed to make a statutorily required payment to USCIS and this may harm NRRC's reputation, though any such harm is primarily self-inflicted. *See Xport Forwarding LLC v. Mesitis DWC LLC*, 694 F. Supp. 3d 1258, 1271 (C.D. Cal. 2023) ("And most significantly, Xport's alleged loss of reputation and goodwill was the result of Xport's own failure to pay its bills on time, giving Mesitis really no choice but to foreclose on its lien … To the extent that Xport has suffered a loss of reputation and goodwill, it has been self-inflicted."); *see also* EB-5 Regional Centers Receive Notice of Intent to Terminate by the USCIS for Failure to Pay Annual Integrity Fees, https://www.globenewswire.com/news-release/2024/07/24/2918451/0/en/EB-5-Regional-Centers-Receive-Notice-of-Intent-to-Terminate-by-the-USCIS-for-Failure-to-Pay-Annual-Integrity-Fees.html (last updated July 24, 2024) ("One should also ask themselves, if the regional center cannot maintain compliance with the most basic requirements of the program, what else have they missed and how confident can I be that my regional center will be able to navigate the evolving requirements of the program?"). But courts have never held that this type of harm – individual investors learning the truth about an entities' noncompliance with statutory requirements – justify the issuance of injunctive relief. For these reasons, NRRC has failed to meet its burden of demonstrating that it will suffer irreparable harm in the absence of injunctive relief.

24

**C.** **The Balance of Equities and the Public Interest Do Not Favor Injunctive Relief**.

The final factors required for injunctive relief – balancing of the equities and the public interest – merge when the Government is the opposing party. *See, e.g., Nken v. Holder*, 556 U.S. 418, 435 (2009). The Supreme Court has cautioned that courts should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982); *see also New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (explaining that enjoining a governmental agency from enforcing a statute enacted by the people's elected representatives constitutes an irreparable injury that weighs heavily against entry of injunctive relief). Moreover, as the Ninth Circuit has held, "the public interest favors applying federal law correctly." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011).

Here, the public interest is served by applying the plain language of 8 U.S.C. § 1153(b)(5)(J)(iv) according to its terms. *See id*. The INA requires USCIS to terminate the designation of a regional center if it fails to pay the Integrity Fund fee within 90 days of the statutory due date. 8 U.S.C. § 1153(b)(5)(J)(iv). It is undisputed that NRRC failed to make payment within 90 days of the statutory October 1, 2023, due date, and USCIS has a statutory obligation to terminate NRRC's designation as a regional center. *See* ECF No. 1 ¶¶ 53, 59. Injunctive relief that bars USCIS from following the text of the INA as written not only harms USCIS, but also harms

25

Congress by frustrating the implementation of a comprehensive statutory scheme. *See New Motor Vehicle*, 434 U.S. at 1351. Here, NRRC's request that the Court exempt it from the statutory deadline for paying the Integrity Fund fee is not only a request for preferential treatment under the INA, but it also directly flout's Congress's mandate to bring all EB-5 participants in line with its reforms of the program. And NRRC's request for special treatment is even more apparent as it fails to account for the other EB-5 regional centers that have complied with the congressional directive for timely payment of the Integrity Fund fee. Indeed, granting NRRC's request for preferential treatment would thus be contrary to the public interest. *See Weinberger*, 456 U.S. at 312-13. Because NRRC's purported irreparable harm does not substantially outweigh these harms to USCIS, Congress, and other regional centers, this Court should deny NRRC's Motion.

## CONCLUSION

For the foregoing reasons, this Court should deny NRRC's Motion.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

GLENN M. GIRDHARRY
Assistant Director

AARON S. GOLDSMITH

26

Senior Litigation Counsel

By:     */s/ Alessandra Faso*
      ALESSANDRA FASO
      Senior Litigation Counsel
      U.S. Department of Justice
      Civil Division
      Office of Immigration Litigation
      District Court Section
      P.O. Box 868, Ben Franklin Station
      Washington, DC 20044
      Telephone: (202) 305-9855
      Facsimile: (202) 305-7000
      alessandra.faso@usdoj.gov

DATED: July 26, 2024      *Attorneys for Defendant*

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(E), I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 6,487 words, excluding the caption and certificates of service and compliance.

DATED:  July 26, 2024                    By:  */s/ Alessandra Faso*
                                         ALESSANDRA FASO
                                         Senior Litigation Counsel
                                         United States Department of Justice
                                         Civil Division

## CERTIFICATE OF SERVICE

I certify that on July 26, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will deliver a copy to all counsel of record.

By: /s/ Alessandra Faso
ALESSANDRA FASO
Senior Litigation Counsel
United States Department of Justice
Civil Division